IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHOPMAN'S LOCAL UNION 502 PENSION FUND, et al., | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | No.: 20-cv-5776 |
| | : | |
| SAMUEL GROSSI & SONS, INC., et al., | : | |
| Defendants. | : | |

MEMORANDUM OPINION

**SITARSKI, M.J.**                                                                                         **January 6, 2022**

Pending before the Court is Plaintiffs' Motion for Leave to File a Second Amended Complaint (ECF No. 34), Defendants' Memorandum of Law in Opposition to the Motion to Amend Complaint (ECF No. 35) and Plaintiff's Reply Memorandum of Law in Support of Their Motion for Leave to File a Second Amended Complaint (ECF No. 43).[1] For the following reasons, Plaintiffs' Motion will be **GRANTED**.

I.      PROCEDURAL/FACTUAL BACKGROUND[2]

The instant action seeks to compel payment of withdrawal liability under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., as amended by the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA), from E&R Erectors, Inc. (E&R) & Bensalem Steel Erectors, Inc. (BSE) as entities under "common control" with Samuel Grossi & Sons, Inc. (S&G) pursuant to ERISA, as alter egos and successors to and as a single

---

[1] The Honorable C. Darnell Jones, II referred the matter to me for disposition pursuant to 28 U.S.C. § 636(b)(1)(A). (Order, ECF No. 38).

[2] The facts are derived from Plaintiffs' Second Amended Complaint (SAC) and taken as true for present purposes.

employer with S&G, and through veil piercing. (SAC, ECF No. 34-3, at ¶¶ 1, 3). SGS participated in and contributed to the Shopmen's Local Union 502 Pension Fund (the Fund)[3] pursuant to the terms of a series of collective bargaining agreements between the two parties. (*Id.* at ¶ 17). On August 5, 2020, SGS notified the Fund that it was ceasing its steel fabrication operations. (*Id.* at ¶ 18). Approximately three weeks later, the Fund demanded that SGS pay roughly 3.8 million dollars in withdrawal liability via 130 monthly payments starting in October 2020. (*Id.* at ¶ 19). As of the date of Plaintiffs' motion, no payment has been made toward this liability. (*Id.* at ¶ 23).

Defendants all shared a common business purpose. (SAC, ECF No. 34-3, at ¶¶ 24, 43). SGS and BSE fabricated steel, and E&R erected the steel fabricated by SGS. (*Id.* at ¶¶ 25-26, 43). Defendants were located on the same or contiguous property and shared the same equipment. (*Id.* at ¶¶ 29, 36, 50, 52). SGS and E&R also shared the same vendors. (*Id.* at ¶ 37). In addition, Defendants shared the same or family-related owners, officers, managers and supervisors. (*Id.* at ¶¶ 32, 43). They shared the same attorneys and employees, and employees of SGS and BSE have received paychecks bearing the other company's name. (*Id.* at ¶¶ 33, 38, 47-48, 53). SGS has switched its name back and forth to BSE. (*Id.* at ¶ 45). Defendants made loans to each other and were operated without formal financial divisions. (*Id.* at ¶¶ 34, 46). SGS and E&R, further, filed joint financial statements. (*Id.* at ¶ 34). Defendants shared the same customers, and SGS, despite being out of business, continues to bid on work to be completed by E&R. (*Id.* at ¶¶ 28, 39, 49). SGS and E&R continue to share a common website, telephone number and fax number. (*Id.* at ¶¶ 30-31).

---

[3] Co-Plaintiff Doreen Friel is the Fund's plan manager and administrator. (SAC, ECF No. 34-3, at ¶ 7).

Plaintiffs initiated this action on November 18, 2020, by filing a complaint, which they amended on December 8, 2020, to seek additional withdrawal liability. (Compl., ECF No. 1; Am. Compl., ECF No. 8). After Plaintiffs moved for summary judgment as to SGS, it consented to judgment, and on May 20, 2021, Judge Jones entered a Consent Judgment in favor of Plaintiffs and against SGS in the amount of $4,030,781. (Consent Judgment, ECF No. 34-3). On August 3, 2021, Plaintiffs moved for leave to file a SAC adding claims for withdrawal liability collection from E&R and BSE based on veil piercing and their alleged control group, alter ego, single employer and successor status, relative to SGS. (SAC, ECF No. 34-3, at ¶¶ 56-69). Defendants filed their response in opposition on August 17, 2021, and Plaintiffs filed their reply in further support on August 31, 2021. (Resp., ECF No. 35).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15(a)(2) sets out the standard for granting leave to amend when, as is the case here, a responsive pleading has been served: "a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a). "The court should freely give leave when justice so requires," and the Third Circuit has held that "motions to amend pleadings should be liberally granted." FED. R. CIV. P. 15(a)(2); *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). The fundamental purpose of Rule 15 is to give a party the opportunity to test its claim on the merits. *United States ex rel Customs Fraud Investigations, LLC v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016).

"Leave to amend must generally be granted unless equitable considerations render it otherwise unjust." *Arthur v. Maerski, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility." *Arthur*, 434 F.3d at 204; *see also Cureton v. Nat'l*

3

*Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001).  Given the liberal standard of Rule 15(a), the party opposing amendment bears the burden of showing undue delay, bad faith, prejudice, or futility.  *Cureton*, 252 F.3d at 273.  The decision to grant or deny a motion for leave to amend is within the sound discretion of the district court.  *Id.* at 272.

Here, Defendants oppose amendment as futile.  "Futility" means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  *Id.*; *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000).  In assessing futility, the Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6).  *Shane*, 213 F.3d at 115; *In re Digital Island Sec. Litig.*, 357 F.3d 322, 337 (3d Cir. 2004).  Therefore, the Court will take the factual allegations of the proposed amended complaint as true, draw all reasonable inferences in favor of the plaintiff, and deny the motion to amend only if the factual allegations in the complaint do not raise plausible claims and are not sufficient "to raise a right to relief above the speculative level." *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F.Supp.2d 635, 639 (E.D. Pa. 2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

III.   ANALYSIS

　　A.   **Availability of Single Employer, Alter Ego and Veil Piercing Claims**

Plaintiffs contend that courts within the Third Circuit, including our Court of Appeals, have recognized single employer, alter ego and veil piercing claims as bases for recovery in the withdrawal liability context.  (Memo. in Supp. of Mot. for Leave, ECF No. 34-1, at 10-12 (citing *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171-73 (3d Cir. 2002); *Solomon v. Klein*, 770 F.2d 352 (3d Cir. 1985)) (additional citations omitted)). Defendants assert that "it is not clear" that these claims are viable theories of recovery in such a

4

case.[4]  (Resp., ECF No. 35, at 10).  Citing Judge McLaughlin's discussion of *Foodtown* and *Solomon* in *Brown v. Astro Holdings, Inc.*, 385 F. Supp. 2d 519, 531 (D.N.J. Aug. 29, 2005), Defendants maintain that Plaintiffs' cited cases "hold little to no precedential value" because they addressed the claims in dicta, without objection from defendants or without considering "any theoretical concerns" regarding application of ERISA and the MPPAA.  (Resp., ECF No. 35, at 10-11 n.4).  Defendants acknowledge that even in *Brown* Judge McLaughlin ultimately "ruled that alter ego claims are generally cognizable under ERISA and the MPPAA," but they posit that she "later struggled to articulate the elements of a claim" in the related case of *Government Development Bank for Puerto Rico v. Holt Marine Terminal, Inc.*, No. 02-7825, 2011 WL 1135944 (E.D. Pa. Mar. 24, 2011).  (*Id.* at 11).

Defendants state that they know of no Third Circuit decision that "explicitly authorized" Plaintiffs to assert these alternative recovery theories in a withdrawal liability case.  (*Id.* at 10).  They agree that "a number of District Courts in this Circuit have permitted one or more of these claims" but insist that "no uniform agreement" exists as to "whether all of these claims are independent causes of action in their own right."  (*Id.* at 11).  Citing *Great-West Life Annuity Insurance Co. v. Knudson*, 534 U.S. 204 (2002), they maintain that the Supreme Court has explained "that ERISA is a comprehensive statutory regime, and cautioned against recognizing remedies that are not specifically authorized by the legislative text."  (*Id.* at 13).  They observe that, unlike claims for controlled group liability, "there is no provision in the text of ERISA or the MPPAA that authorizes alter ego, single employer, and/or veil-piercing claims."  (*Id.* at 14).  According to Defendants, these three claims "are problematic from a theoretical standpoint"

---

[4]  Defendants do not question whether Plaintiffs' remaining claim, for successor liability, is a recognized claim.  (Resp., ECF No. 35, at 22-24 (citing *Einhorn v. M.L. Ruberton Constr. Co.*, 632 F.3d 89, 99 (3d Cir. 2011))).

because for controlled group liability "the question of overlapping ownership is . . . the only real consideration," whereas for these theories, allegedly, "issues relating to common ownership are no more than insignificant factors . . . ."  (*See id.* at 15 & n.5 (discussing "parent-subsidiary," "brother-sister" and "combined" controlled groups based on who owns the employer and any related businesses and in what proportions)).

In reply, Plaintiffs reiterate that in *Foodtown* and *Solomon* the Third Circuit "expressed its view that the statutory 'controlled group' test is not the only means by which a plaintiff may pursue ERISA liability against a defendant other than the signatory employer."  (Reply, ECF No. 43, at 5).  They note that *Foodtown* was decided after *Knudson*, a distinguishable case relating to a separate jurisdictional issue under ERISA.  (*Id.*).  They contend that acceptance of Defendants' arguments would necessitate that the Court "rule contrary to *Foodtown*'s binding precedent," in addition to that of the First, Second and District of Columbia Circuit Courts of Appeals.  (*Id.* at 5-6 (citations omitted)).  Finally, Plaintiffs dispute that Judge McLaughlin's ruling in *Brown* or *Holt Marine Terminal* – both of which found that alter ego and veil piercing claims *are* cognizable in withdrawal liability cases – somehow abrogated the Third Circuit's decision in *Foodtown*.  (*Id.* at 6).

In *Foodtown*, the Third Circuit held that a pension fund stated claims for "disregarding corporate formalities" – specifically alter ego and veil piercing – in an ERISA withdrawal liability case.  296 F.3d at 171.  In reaching this conclusion, the court reasoned: "With regard to alter ego liability in cases involving claims to pension benefits protected by ERISA, as amended by the MPPAA, there is 'a federal interest supporting disregard of the corporate form to impose liability.'"  *Id.* at 169 (quoting *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 460-61 (7th Cir. 1991)).  The Third Circuit's decision in *Foodtown* permitting assertion of such legal theories to circumvent corporate structures where warranted comports with similar decisions from other

6

circuit courts and from district courts. *See Retirement Plan of UNITE HERE Nat'l Ret. Fund v. Kombassan Holding A.S.*, 629 F.3d 282, 288 (2d Cir. 2010) ("To protect employee benefits, courts observe a general federal policy of piercing the corporate veil when necessary.") (citations and quotations omitted); *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.D.C. 2004) ("Alter ego liability under [the MPPAA] further protects the federal interest in the solvency of multiemployer pension plans by enabling ERISA trustees to recover delinquent contributions from a sham entity used to circumvent the participating employer's pension obligations.") (citation omitted); *Mass. Carpenters Cent. Collection Agency v. Belmont Concrete Corp.*, 139 F.3d 304, 305 n.3 (1st Cir. 1998) ("The MPPAA . . . is designed to protect a multiemployer plan from the adverse financial impact of employer withdrawal.  Alter ego and successor liability, by holding companies to their obligations, serve that important interest.") (citation and quotation omitted); *Lumpkin*, 933 F.2d at 460-61 ("[T]he congressional intent of ERISA is to hold employers responsible for pension benefits, so that when the corporate form poses a bar to liability, concerns for corporate separateness are secondary to what we view as the mandate of ERISA.") (citation and quotation omitted); *see also N.J. Bldg. Laborers' Statewide Pension Fund v. Envtl. Contractors, Inc.*, No. 17-3068, 2018 WL 6259240, at *3 (D.N.J. Nov. 30, 2018) (recognizing availability of the single employer theory in a withdrawal liability case).

     Defendants ask this Court to disregard *Foodtown* (and these similar decisions) on the basis of Judge McLaughlin's discussion of it in *Brown*.  She opined in that case that *Foodtown* was not "dispositive" because it did not "directly" address whether alter ego and veil piercing theories were available due to the fact that the issue was not specifically raised on appeal and because it did not address the "doubts" regarding the availability of these theories raised in two prior Supreme Court and Third Circuit cases, *Peacock v. Thomas*, 516 U.S. 349 (1996) and *Trustees of National Elevator Industry Pension, Health Benefit and Educational Funds v. Lutyk*,

7

332 F.3d 188 (3d Cir. 2003).[5]  *Brown*, 385 F. Supp. 2d at 530.  Nonetheless, despite not finding *Foodtown* controlling, Judge McLaughlin "conduct[ed] an independent analysis of whether alter ego or veil piercing theories are available under ERISA and the MPPAA" and held that they *are*. *See id.* at 530-34 (considering "the text of the relevant statutory provisions," federal common law and "the purposes and policies behind ERISA and the MPPAA").  Thus, far from undermining *Foodtown*'s conclusion, *Brown* is actually another district court case recognizing that corporate formalities may be disregarded as necessary in the withdrawal liability context.  *See also Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. 160 E. 22nd Street Realty, LLC*, No. 15-889, 2016 WL 4582046, at *9 (D.N.J. Sept. 2, 2016); *Schaffer v. Charles Benjamin, Inc.*, Nos. 90-6225, 91-6954, 1992 WL 59152, at *7 (E.D. Pa. Mar. 18, 1992).

Further, Judge McLaughlin reached her decision while "mindful of the United States Supreme Court's admonition in *Knudson* . . . that the comprehensive nature of ERISA cautions against reading remedies into the Act that are not reflected in the statutory text . . . ." *Brown*, 385 F. Supp. 2d at 534.  Nevertheless, she concluded that "because alter ego liability is predicated on the alter ego being essentially the same entity as the employer, interpreting the MPPAA to allow it should not unduly expand the reach of withdrawal liability." *Id.* at 532.  She also rejected the argument, made here by Defendants, that alter ego liability would be inconsistent with the regulatory scheme's "seemingly comprehensive list" of "entities under 'common control[.]'"  *See id.* (determining that the scheme only foreclosed liability for alter egos of the statutory employer's controlled groups, not alter egos of the employer itself); *see also* Resp., ECF No. 35, at 15 & n.5 (discussing different types of controlled groups set forth in the

---

[5] As noted in *Brown*, *Peacock* did not "decide whether [alter ego and veil piercing] were permitted" under ERISA.  *Brown*, 385 F. Supp. 2d at 529.  Similarly, *Lutyk* merely expressed "some doubts" about the availability of such claims.  332 F.3d at 193.  Both of these cases preceded the Third Circuit's decision in *Foodtown*.

8

Code of Federal Regulations).  It is true that Judge McLaughlin apparently[6] accepted this argument as to the veil piercing claims against the corporate, rather than individual, defendants. *Brown*, 385 F. Supp. 2d at 533-34.  However, Defendants point to no opinion from any circuit court, or for that matter any other district court judge,[7] that limits veil piercing claims in the withdrawal liability context to individual rather than corporate defendants.  On the contrary, at least the First, Third and Seventh Circuit Courts of Appeals have permitted veil piercing claims against corporations in this context.  *Foodtown*, 296 F.3d at 173; *Lumpkin*, 933 F.2d at 462; *Pension Benefit Guar. Corp. v. Ouimet Corp.*, 711 F.2d 1085, 1093 (1st Cir. 1983).  Accordingly, this Court concludes that Plaintiffs' veil piercing and other theories to disregard corporate formalities are available in this withdrawal liability case.

     **B.**     **Analysis of Single Employer and Alter Ego Claims**

          **1.**     **What Test to Apply**

Plaintiffs assert that district courts within this circuit, interpreting federal labor law, allow single employer and alter ego claims when multiple entities constitute a single "integrated enterprise marked by the absence of an arm's length relationship." (Memo. in Supp. of Mot. for Leave, ECF No. 34-1, at 13 (citations omitted)).  Defendants acknowledge that "[a] number of rulings" from New Jersey district courts have applied this "single employer"/"single integrated enterprise" federal labor law test to alter ego claims as well but point out that such application

---

[6] Reasoning that the regulations defining entities under "common control" "have the potential to overlap a veil piercing analysis" due to the fact that both require consideration of the extent to which one *corporation* is controlled by another, Judge McLaughlin determined that the plaintiffs had stated a claim "against the *individual* defendants." *Brown*, 385 F. Supp. 2d at 533-34 (emphasis added).  However, the Order attached to her Memorandum denied the defendants' motion to dismiss in full. *Id.* at 534.

[7] Judge McLaughlin reached a similar conclusion in *Holt Marine Terminal*. 2011 WL 1135944, at *34.

has not been universal. (Resp., ECF No. 35, at 12 (citing four District of New Jersey cases applying the test)). They point to Judge McLaughlin's opinion in *Holt Marine Terminal* in which she applied both this test and a separate federal common law test[8] – after expressing reservations about each – to the plaintiffs' alter ego claims. (*Id.* at 11-12 (citing *Holt Marine Terminal, Inc.*, 2011 WL 1135944, at *18-20, 30-31)). They also reference Judge Salas's opinion in *160 East 22nd Street Realty* concluding that single employer and alter ego "are completely distinct theories of liability," with the former subject to the labor law test and the latter subject to the common law test. (*Id.* at 12 (citing 2016 WL 4582046, at *7-9)).

Thus, in all but one of Defendants' cited cases the court analyzed an alter ego claim under the federal labor law test applicable to single employer claims. *See N.J. Bldg. Laborers' Statewide Benefit Fund & Trs. Thereof v. Demza Masonry LLC*, No. 18-cv-9607, 2019 WL 6493944, at *5 (D.N.J. Dec. 3, 2019); *Envtl. Contractors, Inc.*, No. 17-3068, 2018 WL 6259240, at *3; *N.J. Bldg. Laborers' Statewide Pension Fund & Trs. Thereof v. Richard A. Pulaski Constr.*, 322 F. Supp. 3d 546, 555 (D.N.J. 2018); *N.J. Bldg. Laborers' Statewide Pension Fund v. CID Constr. Servs., LLC*, No. 15-cv-3412, 2015 WL 5965627, at *4 (D.N.J. Oct. 14, 2015); *Holt Marine Terminal, Inc.*, 2011 WL 1135944, at *18-30. *But see 160 E. 22nd St. Realty, LLC*,

---

[8] Under the common law test, courts consider:

> gross undercapitalization, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation, siphoning of funds from the debtor corporation by the dominant stockholder, nonfunctioning of officers and directors, absence of corporate records, and whether the corporation is merely a facade for the operations of the dominant stockholder[.]

(Resp., ECF No. 35, at *16-17 (quoting *Holt Marine Terminal, Inc.*, 2011 WL 1135944, at *30) (internal citations omitted)).

2016 WL 4582046, at *8. Because the Court concludes below that Plaintiffs' proposed alter ego claim, as pled, satisfies the test in this case, the claim is not futile, and the Court need not consider whether the claim also passes the federal common law test.

### 2. Application

A court applying the federal labor law test must consider four factors to determine whether two or more purportedly separate entities are in fact merely components of a single enterprise: "(1) functional integration of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership." *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982). Whether or not the entities are a single employer "depends on all the circumstances of the case" and none of the factors, in isolation, is controlling. *Id.* at 1121 n.1, 1122. Nonetheless, "stress has normally been laid upon the first three factors which reveal functional integration with particular reference to whether there is centralized control of labor relations." *Id.* at 1121 n.1.

First, "[i]n determining whether two entities have interrelated operations, courts within this Circuit have considered such factors as whether the entities share equipment, funds, personnel, and office space." *Holt Marine Terminal*, 2011 WL 1135944, at *22 (citing *Limbach Co. v. Sheet Metal Workers Int'l Ass'n*, 949 F.2d 1241, 1260 (3d Cir. 1991); *NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 551 (3d Cir. 1983)). "Courts within other circuits have focused on similar factors, including whether employees of nominally separate employers are paid by the same entity." *Id.* (citation omitted). Here, Plaintiffs plead that Defendants share equipment, employees, and the same or contiguous physical space for their operations. (SAC, ECF No. 34-3, at ¶¶ 29, 33, 36, 47, 50, 52). They aver that Defendants share finances in that they have made intercompany loans to each other and are run without formal financial divisions, that SGS and E&R file joint financial statements, and that employees of SGS – who has changed its name back

11

and forth to BSE – sometimes received their paychecks from BSE. (*Id.* at ¶¶ 34-35, 46, 48, 51). Thus, Plaintiffs have pled that Defendants have interrelated operations.

Second, to determine whether centralized control of labor relations exists, courts examine whether the same individuals make labor and employment decisions, whether employees are routinely shared between the entities, and whether employees of one entity work for the other unpaid. *Holt Marine Terminal*, 2011 WL 1135944, at *25 (citing *Al Bryant, Inc.*, 711 F.2d at 552). Plaintiffs allege that Defendants have the same or related officers, managers, and supervisors – the individuals, the Court infers, who would have the responsibility for making labor and employment decisions. (SAC, ECF No. 34-3, at ¶¶ 32, 44). As noted, Plaintiffs also allege that Defendants share employees. (*Id.* at ¶¶ 33, 47). These facts, taken as true, are sufficient at this stage to establish that Defendants exercised centralized control of their purportedly separate workforces.

Third, courts look at whether the entities share common ownership. *Holt Marine Terminal*, 2011 WL 1135944, at *26. "However, formal ownership is not a pre-requisite to finding common ownership, and 'actual control can be more significant than formal ownership.'" *Id.* (quoting *NLRB v. Omnitest Inspection Servs.*, 937 F.2d 112, 118 (3d Cir. 1991)). Thus, common ownership may exist "where a common person or entity has exercised control over both entities' financial operations or labor relations." *Id.* (citing *Omnitest*, 937 F.2d at 121). "Courts have also found common ownership where the relationships between entities evidence the sort of continuous financial support or transfer of resources that are not typical of arms-length transactions." *Id.* (citing *NLRB v. O'Neill*, 965 F.2d 1522, 1530 (9th Cir. 1992)). Further, "substantially identical ownership may be found where two enterprises are owned by members of the same family." *Trafford Distrib. Ctr. v. N.L.R.B.*, 478 F.3d 172, 179 (3d Cir. 2007). In this case, Plaintiffs plead that Defendants are owned by the same or familial related individuals.

(SAC, ECF No. 34-3, at ¶¶ 32, 44).  Even if this was not the case, Plaintiffs also plead that the same or related individuals serve as Defendants' officers, managers, and supervisors who presumably exercise control over all three entities' financial operations and workforces.  (*Id.*).  In addition, Plaintiffs have pled facts suggesting ongoing mutual financial support among Defendants, such as intercompany loans, a lack of formal financial divisions, and the filing of joint financial statements by SGS and E&R.  (*Id.* at 34-35, 46, 51).  Accordingly, Plaintiffs have pled that Defendants share common ownership.

Fourth, a court must assess whether the entities share common management.  *Holt Marine Terminal*, 2011 WL 1135944, at *28.  This factor requires the plaintiff "to plead that key management functions at two separate entities were performed by the same group of people."  *Id.* (citing *NLRB v. Al Bryant, Inc.*, 711 F.2d at 551; *Penntech Papers v. NLRB*, 706 F.2d 18, 25 (1st Cir. 1983)).  Plaintiffs do not plead exactly what management functions are performed, but they do plead that the same or a related group of people serve as the officers, managers, and supervisors of Defendants.  (SAC, ECF No. 34-3, at ¶¶ 32, 44).  These averments suffice at present to establish the existence of common management, but even if they did not, the absence of this factor would not serve as a basis to deny Plaintiffs' proposed amendment to add single employer and alter ego claims.  *See Browning-Ferris*, 691 F.2d at 1121 n.1 (courts "stress" the existence of the other three factors, not common management).

Defendants complain that Plaintiffs "basically recite the above-discussed factors in formulaic fashion" in violation of Federal Rule of Civil Procedure 8(a)(2) while also faulting Plaintiffs for not using the exact language for each factor set forth in *Holt Marine Terminal*.  (*See* Resp., ECF No. 35, at 21 (bolding phrasing from *Holt Marine Terminal* and claiming that Plaintiffs fail to make the necessary averments); *see also* FED. R. CIV. P. 8(a)(2)).  On the contrary, Plaintiffs have pled the substance of the factors recounted in that case while avoiding

simply parroting the boilerplate language used therein. (*See, e.g.,* SAC, ECF No. 34-3, at ¶¶ 29, 32-36, 44-48, 50-52). Defendants also claim that "many" of Plaintiffs' alleged facts are improperly pled "upon information and belief," but the only averments so pled and relied upon by the Court in reaching its decision are that Defendants all share equipment. (*See id.* at ¶¶ 36, 52). However, even if the Court disregarded this single averment, Plaintiffs plead other indicia of integrated operations, such that the Court's conclusion as to this factor, let alone the claims as a whole, would be the same. (*See id.* at ¶¶ 29, 33-35, 46-48, 50-51 (alleging shared real property, employees and finances)). Additionally, Defendants' own cited cases confirm that "upon information and belief" pleading is appropriate where, as here, "the requisite factual information is peculiarly within the defendant's knowledge or control . . . ."[9] *McDermott v. Clondalkin Grp., Inc.*, 649 F. App'x 263, 267-68 (3d Cir. 2016).

In sum, Plaintiffs plead all four factors considered by courts under the federal labor law test to determine whether a plaintiff has alleged that purportedly distinct entities are, in fact, a single integrated enterprise. This fact renders this case distinguishable from the case relied upon by Defendants, *160 East 22nd Street Realty*, where the pleading alleged "no facts" in support of the important "centralized control of labor relations" factor and where the facts supporting the "interrelation of operations" factor were "thinly pleaded, at best." 2016 WL 4582046, at *8.

---

[9] Defendants observe that *McDermott* forbids pleading upon information and belief where the plaintiff does not provide "additional information that substantiates any of the[ ] naked contentions," but as just noted, Plaintiffs provide additional specific information regarding Defendants' interrelated operations. (Resp., ECF No. 35, at 20 (citing *McDermott*, 649 F. App'x at 267-68); *see also McDermott*, 649 F. App'x at 267 (rejecting "insinuate[ion] that the Federal Rules of Civil Procedure do not permit facts pleaded upon information and belief to serve as the sole basis for relief" as "plainly incorrect"; *cf. Essex Ins. Co. v. Miles*, No. 10-3598, 2010 WL 5069871, at *3 (E.D. Pa. Dec. 3, 2010) (finding alter ego allegations insufficient where the sole fact not pled on information and belief was that the individual defendants were the owners of the corporation))).

Accordingly, the Court shall grant Plaintiffs' motion for leave to amend as to their single employer and alter ego claims.

### C. Analysis of Veil Piercing Claim

Whereas single employer and "alter ego claims assert direct liability based on a violation of ERISA," "veil piercing claims seek to impose vicarious liability on one party for another party's debts . . . ." *Holt Marine Terminal*, 2011 WL 1135944, at *11 (citing *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1038 (7th Cir. 2000)). Therefore, veil piercing is used "as a means of enforcing a judgment arising from a separate cause of action." *Id.* (citing *Peacock*, 516 U.S. at 354); *see also Foodtown*, 296 F.3d at 171 ("Piercing the corporate veil is a 'tool of equity,' a remedy that is involved when [a subservient] corporation is acting as an alter ego of [a dominant corporation.]") (quoting *Carpenters Health & Welfare Fund v. Kenneth R. Ambrose, Inc.*, 727 F.2d 279, 284 (3d Cir. 1983)) (additional citation and quotations omitted).

Here, Plaintiffs have obtained a consent judgment against SGS, and Plaintiffs now seek to hold E&R and BSE vicariously liable for that judgment by piercing their corporate veils. (Consent Judgment, ECF No. 34-3; *see also* SAC, ECF No. 34-3, at ¶ 69 ("The corporate veils of SGS, E&R and BSE should be pierced to hold them jointly and severally liable for SGS's withdrawal liability under ERISA, §§ 1301(b) and 1381(a).")).  By analyzing Plaintiffs' single employer, alter ego and veil piercing claims as one under the federal labor law test, Defendants tacitly acknowledge that Plaintiffs' allegations in support of these other recovery theories, once found sufficient, also make out Plaintiffs' veil piercing claim pursuant to the test as well.  (Resp., ECF No. 35, at 18-22).  Defendants do analyze the veil piercing claim separately under the federal common law test, concluding that it fails Rule 9(b)'s pleading requirements for fraud-based claims, but this Court has already held that at this stage of the proceedings Plaintiffs need

15

not fulfill this test in addition to the federal labor law test.[10] (*Id.* at 17-18; *see supra* § III.B.1; *see also* FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")). Because Plaintiffs have adequately pled underlying violations of ERISA, and indeed obtained a judgment against SGS, it would not be futile for them to add a claim to pierce E&R's and BSE's corporate veils. *See Holt Marine Terminal*, 2011 WL 1135944, at *11. Accordingly, the Court shall grant Plaintiffs' motion for leave to amend as to their veil piercing claim.

### D.  Analysis of Successor Liability Claim

The parties agree that the imposition of successor liability in the withdrawal liability context requires the court to consider: (1) continuity of operations between the predecessor and successor; (2) notice to the successor of the predecessor's unpaid ERISA contributions; and (3) the inability of the predecessor to provide relief itself. (Resp., ECF No. 35, at 22 (citing *Einhorn*, 632 F.3d at 99); Reply, ECF No. 43, at 11 (citing *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 150-51 (3d Cir. 2014); *Einhorn*, 632 F.3d at 99)). They further agree that evaluating continuity of operations, in turn, requires consideration of: (1) continuity of management, employees, equipment and location; (2) fulfillment of the predecessor's work orders; and (3) constancy of customers. (Resp., ECF No. 35, at 22-23 (citing *Einhorn*, 632 F.3d at 99) (additional citation omitted); Reply, ECF No. 43, at 11-12 (same)).

---

[10] To the extent that Defendants contend that Plaintiffs' veil piercing claim fails under the labor law test because it does not meet the particularity requirements of Rule 9(b), a contention not explicitly made in their brief, this argument fails because the claim is not based on fraud. Rather, Plaintiffs seek to pierce the corporate veils of E&R and BSE because allowing them "to adhere to the fiction of separate corporate existences in this case would be *fundamentally unfair and contrary to law and public policy*." (SAC, ECF No. 34-3, at ¶ 67 (emphasis added); *see Zubik v. Zubik*, 384 F.2d 267, 272 (3d Cir. 1967) ("the appropriate occasion for disregarding the corporate existence occurs when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime") (citations omitted)).

16

Defendants do not contend that Plaintiffs have failed to plead any of the three factors for imposition of successor liability, including the three sub-factors for establishing continuity of operations.[11]  (Resp., ECF No. 35, at 22-24).  Instead, they maintain that:

> Plaintiffs[ ] fail[ ] to plead viable claims for successor liability against Defendants E&R and BSE because there is absolutely no allegation in the Proposed SAC that Defendant SGS actually effectuated a transaction that resulted in a merger with either Defendant E&R or BSE; or that Defendants E&R or BSE purchased any assets from Defendants SGS[ ].

(*Id.* at 23).

According to Defendants, "[a]pplicable case law suggests that a prerequisite for stating a claim for successor liability under ERISA and the MPPAA is establishing that a merger or asset sale actually occurred."  (Resp., ECF No. 35, at 22 (citations omitted)).  However, although Defendants' cited cases all involved a merger or acquisition, none of them state that such a transaction is *required* for liability.[12]  *Teamsters Pension Trust Fund of Phila. & Vicinity v. Littlejohn*, 155 F.3d 206, 209 (3d Cir. 1998); *Einhorn*, 632 F.3d at 99; *Cement Masons' Union Local No. 592 Pension Fund v. Almand Bros. Concrete, Inc.*, No. 14-5413, 2018 WL 4462395, at *8 (D.N.J. Sept. 18, 2018); *RP Baking LLC v. Drivers & Salesmen Local 194 & Indus. Pension Fund*, No. 10-3819, 2012 WL 1079649, at *3-4 (D.N.J. Mar. 30, 2012).  On the contrary, in *Thompson*, a case that did not involve a merger or acquisition but rather an alleged "mere continuation" of a predecessor company, the Third Circuit held that the applicable federal common law standard requires evaluation of "only" continuity of operations, completion of the

---

[11]  Defendants repeat their argument that "many" of the averments undergirding Plaintiffs' claims, including their successor liability claim, are "conclusory boilerplate" and improperly made "upon information and belief," but for the reasons already discussed, the Court remains unconvinced.  (*See supra* at 14-15 & n.9).

[12]  Defendants appear to acknowledge this fact by contending only that the applicable cases "suggest[ ]" that a merger or acquisition is necessary.  (Resp., ECF No. 35, at 22).

17

predecessor's work orders and constancy of customers. 748 F.3d at 150-51 (internal quotations omitted). Thus, Plaintiffs' proposed claim is not futile on the basis that they have pled no merger or acquisition. Accordingly, the Court shall grant Plaintiffs' motion for leave to amend as to their successor liability claim.

## IV.     CONCLUSION

For the reasons explained herein, Plaintiffs' Motion for Leave to File a Second Amended Complaint is granted. An appropriate Order follows.

BY THE COURT:

    /s/ Lynne A. Sitarski
LYNNE A. SITARSKI
United States Magistrate Judge
